IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

LESLIE JAY SERGEANT,

       Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. C13-2078

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A.*   *Sergeant's Education and Employment Background* . . . . . . . . . . . 4
    *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 4
        *1.*   *Sergeant's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *2.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 5
    *C.*   *Sergeant's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . 6

*IV.*  *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . 8
    *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . 11
        *1.*   *Substance Abuse* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *2.*   *Medical Source Opinions* . . . . . . . . . . . . . . . . . . . . . . . 15
            *a.*   *Dr. Calderwood's Opinions* . . . . . . . . . . . . . . . . . 15
            *b.*   *Dr. Oleskowicz's Opinions and Nicksolat's Opinions* . 19
        *3.*   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 22
        *4.*   *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . . 24
    *C.*   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*V.*    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*VI.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Leslie Jay Sergeant on November 20, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Sergeant asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Sergeant requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary

outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Sergeant's Education and Employment Background

Sergeant was born in 1954. At the administrative hearing, Sergeant testified that he dropped out high school, but later earned a GED at Kirkwood Community College. After earning his GED, he also studied market management for two years at Hawkeye Community College in Waterloo, Iowa. Sergeant's past work includes being a dishwasher at a restaurant, working for an employment placement agency, and working as a store clerk.

### B. Administrative Hearing Testimony

#### 1. Sergeant's Testimony

At the administrative hearing, Sergeant testified that he believes he has been "disabled most of my life, but I haven't really figured out that I was until probably a year or two ago."[1] Sergeant defined being disabled as being unable to "hold a steady job."[2] The ALJ inquired further regarding Sergeant's reasoning:

Q:   What do you think the reason -- it says you've got some problems with drugs and alcohol. Is that some of the reason you couldn't hold jobs?
A:   No. I, I occasionally use.
Q:   What's the reason you don't think you can hold a job?
A:   My paranoia has gotten bad.
Q:   Is the paranoia from drugs?
A:   No. I was born with [it].

---

[1] Administrative Record at 38.

[2] *Id.*

4

(Administrative Record at 39.) In response to questions from the ALJ regarding his drug use, Sergeant testified that he primarily used marijuana and crack cocaine in the past, but admitted to still using them "occasionally." For example, Sergeant stated that he last used crack cocaine 1 to 3 months prior to the hearing.

Sergeant's attorney also questioned Sergeant regarding his mental health issues. Sergeant described his paranoia as causing him to not want to be around people because he believes they are "talking against" him. Sergeant also indicated that he has difficulty remembering things, due partly to medication that he takes. Finally, Sergeant testified that he suffers from bipolar disorder, with greater emphasis on depression than manic states.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is capable of:

> lifting 50 pounds occasionally, 25 pounds frequently; sitting and standing two hours at a time for six of an eight-hour day; walking three blocks; no climbing of ladders, ropes, and scaffolds; no working at heights. [He or she] would a need lower stress level, such as four, with ten being the most stressful and one being the least stressful; would require a job with no contact with the general public and limited contact with fellow workers.

(Administrative Record at 54-55.) The vocational expert testified that under such limitations, Sergeant could perform the following medium jobs: (1) packager (1,800 positions in Iowa and 166,000 positions in the nation), (2) stores laborer (780 positions in Iowa and 96,000 positions in the nation), and (3) industrial cleaner (600 positions in Iowa and 371,000 positions in the nation). The ALJ asked the vocational expert two additional hypotheticals which were identical to the first hypothetical except that the individual would miss three or more days of work per month due to drug and alcohol addition (hypothetical two) and/or chronic pain syndrome, depression, and mental impairment (hypothetical three). The vocational expert testified that "[i]f an individual misses three or more days

of work a month, under those chronic conditions, that would preclude competitive employment."[3]

### C. Sergeant's Medical History

On November 8, 2010, Sergeant was referred to Dr. Laura V. Calderwood, M.D., after being hospitalized for a brief period. When asked what his chief complaint was, Sergeant stated "I've always had problems."[4] In speaking with Sergeant, Dr. Calderwood noted:

> His mood is depressed and he more irritable. He isn't interested in anything and he doesn't want to do anything. He can't enjoy things. He doesn't have any hope. Things keep going downhill. His energy is low and he has a bad opinion of himself. . . . He said he is more often depressed. He has had occasional episodes of mania. He said they last for less than a day. His thoughts race all the time. . . . It's hard to get anything out of him except that he stays up without need for sleep. His answers don't always make sense.

(Administrative Record at 301.) Dr. Calderwood also noted that Sergeant had a history of abusing drugs and alcohol. According to Dr. Calderwood's notes, "[s]ometimes he uses drugs now. Sometimes he drinks to excess but he says he doesn't drink very often."[5] Upon examination, Dr. Calderwood diagnosed Sergeant with bipolar disorder, cognitive disorder, and occasional alcohol and drug abuse. Dr. Calderwood recommended medication and psychotherapy as treatment.

On March 6, 2012, Dr. Jeanette H. Oleskowicz, M.D., filled out a disability benefits questionnaire for Sergeant, in conjunction with an application for Veterans disability benefits. Dr. Oleskowicz diagnosed Sergeant with bipolar disorder, history of

---

[3] Administrative Record at 56.

[4] *Id.* at 301.

[5] *Id.*

personality disorder, and history of polysubstance dependence in full remission. Specifically, Dr. Oleskowicz found that:

> [Sergeant] meets the diagnosis of Bipolar disorder, type II with psychotic features; Polysubstance Dependence, in sustained full remission. He likely also had Antisocial Personality Disorder by history. [Sergeant] has serious [symptoms] at this time to include chronic paranoid ideation, mood lability and intermittent auditory hallucinations though he is maintaining meaningful relationships. . . . Stays at home mostly, avoid[s] crowds as he feel[s] paranoid. . . . [H]as had a history of sporadic short term jobs. History of substance abuse but has been clean off drugs for 1 year now. Currently, he is on an antipsychotic medication along with a mood stabilizer and is in counseling. He has both social and occupational impairment.

(Administrative Record at 370.)

On May 15, 2012, Maryam Nicksolat, P.A., also filled out a benefits questionnaire for Sergeant, in conjunction with his Veterans disability benefits application. Nicksolat diagnosed Sergeant with bipolar disorder and cognitive disorder. Nicksolat opined that Sergeant's medical conditions prevent him from securing substantial gainful employment. Nicksolat noted that Sergeant "reports his paranoia condition steadily bec[a]me wor[se] during the last 5-6 years, as a result preventing him to hold any job."[6] Nicksolat further noted that Sergeant rarely leaves his home due to his paranoia. Finally, Nicksolat indicated that Sergeant was happy with his mental health treatment from Dr. Calderwood, and his medicine was "helping a lot."

On September 10, 2012, at the request of Sergeant's attorney, Dr. Calderwood filled out "Mental Impairment Interrogatories" for Sergeant. Dr. Calderwood diagnosed Sergeant with bipolar disorder, cognitive disorder, and occasional drug and alcohol abuse. Dr. Calderwood indicated that Sergeant suffered from moderate to severe stress due to his marriage and finances. Dr. Calderwood found that Sergeant had the following signs and

---

[6] Administrative Record at 364.

symptoms: poor memory, mood disturbance, pervasive loss of interests, paranoia, difficulty thinking and concentrating, and social withdrawal and isolation. Dr. Calderwood noted that Sergeant has improved with treatment, and his mood is better with medicine. Dr. Calderwood opined that Sergeant's prognosis was "[f]air at best."[7] Dr. Calderwood determined that Sergeant had "marked" difficulties in carrying out detailed instructions and maintaining attention and concentration for extended periods of time. Dr. Calderwood also suggested that Sergeant would miss about 3 days of work per month due to his impairments or treatment for his impairments.[8] Finally, Dr. Calderwood determined that Sergeant had the following limitations: slight restriction of activities of daily living, moderate difficulties in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Sergeant is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

---

[7] Administrative Record at 430.

[8] In the questionnaire, Dr. Calderwood puts a question mark next to the space for being absent "about three times a month" due to impairments or treatment for impairments. *See* Administrative Record at 431.

> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at
590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process);
*Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.
§§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in
the evaluation of disability, the process ends and the claimant is determined to be not
disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d
at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant
"bears the burden of demonstrating an inability to return to [his] or her past relevant
work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,
524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden
shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC
[(residual functional capacity)], age, education, and work experience, there [are] a
significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Sergeant had not engaged in substantial gainful activity since May 1, 2009. At the second step, the ALJ concluded from the medical evidence that Sergeant has the following severe impairments: probable bipolar disorder II, provisional generalized anxiety disorder, and occasional drug and alcohol abuse. At the third step, the ALJ found that Sergeant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Sergeant's RFC as follows:

> based on all of the impairments, including the substance use disorders, [Sergeant] has the residual functional capacity to perform medium work . . . except that [he] can sit and stand for 2 hours at a time and for 6 hours out of 8; he can walk 3 blocks. [Sergeant] cannot climb ladders, ropes, or scaffolds, nor should he work at heights. [He] would need a lower stress level such as a 4 with a 10 being the most stressful and 1 being the least stressful. He requires a job with no contact with the general public and limited contact with fellow workers. Due to drug and alcohol addictions, [Sergeant] would miss 3 or more days of work per month.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Sergeant has no past relevant work. At the fifth step, the ALJ determined that considering

Sergeant's age, education, work experience, and RFC, *including his substance use disorders*, there would be no jobs in the national economy that Sergeant could perform.[9]

Returning to the fourth step, however, the ALJ determined that if Sergeant *stopped* his substance use, his RFC would be as follows:

> [Sergeant] would have the residual functional capacity to perform medium work . . . except that [he] can sit and stand for 2 hours at a time and for 6 hours out of 8; he can walk 3 blocks. [Sergeant] cannot climb ladders, ropes, or scaffolds, nor should he work at heights. [He] would need a lower stress level such as a 4 with a 10 being the most stressful and 1 being the least stressful. He requires a job with no contact with the general public and limited contact with fellow workers.

(Administrative Record at 25.) Also at this step, the ALJ, again, determined that Sergeant was unable to perform any of his past relevant work. Finally, continuing to the fifth step, the ALJ determined that if Sergeant stopped his substance use, then, based on his age, education, previous work experience, and RFC, he could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Sergeant was not disabled.

### B. Objections Raised By Claimant

Sergeant argues that the ALJ erred in four respects. First, Sergeant argues that the ALJ's finding that his substance use was a contributing factor material to the determination of disability was not based on substantial evidence. Second, Sergeant argues that the ALJ failed to properly consider the opinions of his treating psychiatrist, Dr. Calderwood, and other medical sources, Dr. Oleskowicz, and examining source, and Maryam Nicksolat, a physician's assistant. Third, Sergeant argues that the ALJ failed to properly evaluate his subjective allegations of disability. Lastly, Sergeant argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

---

[9] Administrative Record at 23.

## 1.    Substance Abuse

Sergeant apparently concedes that the ALJ properly followed the methodology for determining whether substance use is a contributing factor material to the determination of disability. Sergeant takes issue with the ALJ's conclusion that if he stopped his substance use, he would not be disabled and have the functional capacity to perform work that exists in significant numbers in the national economy. Sergeant maintains that even if substance use is removed as a factor in determining disability, he has non-substance abuse impairments which support a finding of disability. In fact, Sergeant argues that the ALJ should not have determined that he suffers from a substance abuse disorder at all. Sergeant asserts that: (1) Dr. Calderwood, his treating psychiatrist, opined that he would suffer from the same symptoms even if he stopped using drugs or alcohol; (2) state agency doctors who reviewed his medical records did not suggest that his drug or alcohol use was material to a determination of disability; and (3) Dr. Oleskowicz found that his substance dependence was in "sustained full remission." Therefore, Sergeant concludes that the ALJ's decision on the issue of substance abuse is not based on substantial evidence on the record as a whole.

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Pub. L. No. 104-121, 110 Stat. 847; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (discussing the 1996 Congressional amendment); *Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998) (same). The regulations implemented this law at 20 C.F.R. § 404.1535 (relating to applications for disability insurance benefits) and 20 C.F.R. § 416.935 (relating to applications for SSI benefits). The two sections are identical and provide as follows:

> How we will determine whether your drug addiction or
> alcoholism is a contributing factor material to the
> determination of disability.

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> > (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> > (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

According to the regulations, the ALJ must first determine whether the claimant is disabled. *See* 20 C.F.R. § 416.935 ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "The ALJ must reach this determination initially . . . using the five-

step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (citation omitted).

If the ALJ determines that all of a claimant's limitations, including the effects of substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id*. at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)). "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted). The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence. *Id*. at 695. In summary, "[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id*.

Here, the ALJ followed the analytical framework set forth in the regulations. The ALJ first applied the five-step sequential evaluation process for determining whether an individual is disabled, and determined that Sergeant was disabled due to the fact that "[he]

14

has engaged in substance abuse and alcohol dependence/abuse for many years. Such abuse makes his dependability for a potential employer questionable, and therefore would require an employer that tolerates multiple unexcused absences per month."[10] Next, the ALJ determined that if Sergeant stopped the substance use, he would continue to have a severe impairment or combination of impairments. The ALJ concluded, however, that absent the substance use, his remaining limitations were not disabling.[11] Therefore, having reviewed the entire record, the Court finds that the ALJ properly analyzed the issue of Sergeant's substance abuse in accordance with both the law and Social Security Regulations. At this point, the Court makes no determination on the ALJ's conclusion that absent the substance use, Sergeant is not disabled. Instead, the Court will address the remaining issues raised by Sergeant on appeal, and determine whether absent substance use there is substantial evidence on the record as a whole to support the ALJ's disability determination.

## 2. *Medical Source Opinions*

### a. *Dr. Calderwood's Opinions*

Sergeant argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Calderwood. Sergeant maintains the ALJ failed to properly weigh Dr. Calderwood's opinions. Sergeant also asserts the ALJ failed to provide any reasons for discounting Dr. Calderwood's opinions as required by social security law. Sergeant

---

[10] Administrative Record at 22.

[11] The Court notes that Sergeant's argument that the ALJ's consideration of his substance abuse is misplaced because his use of drugs and alcohol did not affect his symptoms and was in remission is curious. The ALJ only found that Sergeant was disabled because of his history of drug and alcohol abuse and continued "occasional" use of drugs and alcohol after the alleged disability onset date. Therefore, even assuming Sergeant is correct that the ALJ should not have determined that he had a substance abuse problem during the relevant disability time period, the ALJ would still have determined that Sergeant was not disabled, as he concluded that absent the substance use, Sergeant's remaining limitations were not disabling. *See* Administrative Record at 23-30.

concludes that this matter should be remanded for further consideration of Dr. Calderwood's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight

to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Furthermore, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

Moreover, it is appropriate for an ALJ to "seek additional clarifying statements from a treating physician" when a crucial issue is undeveloped. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)).

In addressing Dr. Calderwood's opinions, the ALJ reviewed the psychiatrist's findings on the "Mental Impairment Interrogatories" she filled out for Sergeant, but did not weigh these opinions. Instead, the ALJ noted that:

17

> In the questionnaire, [Dr. Calderwood] opined that [Sergeant] has only mild limitations in the following categories: Carrying out very short and simple instructions, maintaining regular attendance, interacting appropriately with the general public, asking simple questions or requesting assistance. She further opined that [Sergeant] has moderate limitations in being aware of normal hazards and taking appropriate precautions. Lastly, she felt [Sergeant] ha[d] marked restrictions in only the following areas of functioning: Carrying out detailed instructions and maintaining attention and concentration for extended periods of time.

(Administrative Record at 27-28.) From this review of Dr. Calderwood's opinions, the ALJ concluded that his "residual functional capacity assessment . . . accounts for such difficulties."[12]

At the outset, the Court agrees with Sergeant that the ALJ failed to weigh Dr. Calderwood's opinions; and instead, simply recited *some* of Dr. Calderwood's opinions in his decision. Additionally, the Court is also concerned with the ALJ's consideration of Dr. Calderwood's opinions because the ALJ failed to address two other pertinent opinions expressed by Dr. Calderwood in the "Mental Impairment Interrogatories" she filled out for Sergeant. First, the ALJ does not address Dr. Calderwood's finding that Sergeant "probably" has "frequent" deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.[13] Second, Dr. Calderwood also suggested that Sergeant would miss about three days of work per month due to his mental health impairments or treatment for such impairments.[14] The Court acknowledges that these additional opinions from Dr. Calderwood are not entirely clear, as she states Sergeant "probably" has "frequent"

---

[12] Administrative Record at 28.

[13] *See Id.* at 433.

[14] *Id.* at 431.

18

deficiencies of concentration, persistence, or pace, and indicates that Sergeant would miss three days of work per month due to his impairments or treatment for his impairments with a question mark. Nevertheless, even if Dr. Calderwood's opinions are not entirely clear, the Court believes that such opinions are pertinent to a finding of disability and should have been addressed by the ALJ. For example, at the administrative hearing, the vocational expert testified that if Sergeant missed three or more days of work per month due to his mental health impairments, then he would be precluded from competitive employment.[15] Considering that Dr. Calderwood is the only treating source to offer any opinions on Sergeant's impairments, and considering the testimony of the vocational expert, the Court concludes that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Calderwood's opinions. *See Cox*, 495 F.3d at 618. The Court further concludes that due to a lack of clarity in Dr. Calderwood's opinions, the ALJ should recontact Dr. Calderwood to seek clarification of her opinions regarding Sergeant's mental impairments. *See Goff*, 421 F.3d at 791.

Accordingly, the Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Calderwood's opinions. On remand, the ALJ shall weigh Dr. Calderwood's opinions and provide clear reasons for accepting or rejecting Dr. Calderwood's opinions and support his reasons with evidence from the record. The ALJ must also recontact Dr. Calderwood to seek clarification of her opinions regarding Sergeant's mental impairments and limitations, and obtain supporting medical evidence, in order to properly evaluate her opinions.

### b. *Dr. Oleskowicz's Opinions and Nicksolat's Opinions*

Sergeant argues that the ALJ erred by not addressing the opinions of Dr. Oleskowicz, an examining source, who provided a detailed disability evaluation for Sergeant in connection with his application for Veterans disability benefits. Similarly,

---

[15] *See* Administrative Record at 56.

Sergeant argues that the ALJ erred by not addressing the opinions of Maryam Nicksolat, a physician's assistant, who also provided a detailed disability evaluation for Sergeant in connection with his application for Veterans disability benefits. Sergeant concludes that this matter should be remanded for further consideration of Dr. Oleskowicz's and Nicksolat's opinions.

In his decision, the ALJ did not explicitly address either Dr. Oleskowicz's or Nicksolat's opinions. Instead, he stated:

> [Sergeant] applied for Veteran's Disability Benefits in 2012. The undersigned notes that a decision by any other nongovernmental agency or other governmental agency about disability or blindness is based on that agency's rules and is not binding on the Social Security Administration. As such, the undersigned affords any such evidence little weight.

(Administrative Record at 29.)

In *Morrison v. Apfel*, 146 F.3d 625 (8th Cir. 1998), the Eighth Circuit Court of Appeals specifically addressed the type of consideration ALJ's should give opinions from VA doctors and medical sources, such as Dr. Oleskowicz and Nicksolat. The Eighth Circuit stated:

> It is true that "the ALJ does not have to discuss every piece of evidence presented. . . ." *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). It is also true that a disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. *See Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996). We think, however, that the VA finding was important enough to deserve explicit attention. We agree with other courts that findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision. *See Wilkins v. Callahan*, 127 F.3d 1260, 1262 (10th Cir. 1997); *Baca v. Department of Health and Human Services*, 5 F.3d 476, 480 (10th Cir. 1993); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979).

It may be, as the Commissioner suggests, that the ALJ's failure to address the VA findings constituted an "implicit rejection" of the finding of disability by the VA. . . . Nonetheless, an extensive physical examination documenting Morrison's medical problems, followed by a finding of a permanent and total disability by another government agency, all of which occupies some thirty pages in the record, merits more than simply an implicit rejection. If the ALJ was going to reject the VA's finding, reasons should have been given, to enable a reasoned review by the courts. We are fortified in this conclusion by the fact that the Social Security Administration has given this very instruction to its adjudicators. A 1992 memorandum from the Social Security Administration's Chief Administrative Law Judge to the Office of Hearings and Appeals field personnel reminded "all ALJs and decision writers that even though another agency's determination that a claimant is disabled is not binding on SSA . . ., the ALJ must evaluate it as any other piece of evidence, and address it in the decision." Memorandum, Social Security Administration Office of Hearings and Appeals (Oct. 2, 1992), at 3 (emphasis added).

*Morrison*, 146 F.3d at 628.

Here, Dr. Oleskowicz's and Nicksolat's diagnoses are consistent with Dr. Calderwood's diagnoses, Sergeant's treating psychiatrist. Both sources also determined that Sergeant had a significant disability with severe impairments which would make holding a full-time job difficult.[16] Additionally, both sources provided a thorough examination, including detailed notes concerning Sergeant's impairments and limitations totaling 19 pages in the record.[17] Therefore, having thoroughly reviewed the entire record, the Court finds that the ALJ's implicit rejection of Dr. Oleskowicz's and

---

[16] Even though both sources indicated that Sergeant would have difficulty holding a full-time job due to his impairment, an important factor in Sergeant not receiving Veterans disability benefits was that neither source believed his impairments occurred during his military service or were the result of his military service.

[17] *See* Administrative Record at 362-364; 368-383.

Nicksolat's opinions was insufficient. "If the ALJ was going to reject the VA's finding, reasons should have been given, to enable a reasoned review by the courts." *Morrison*, 146 F.3d at 628. Accordingly, on remand the ALJ must thoroughly address the opinions of Dr. Oleskowicz and Nicksolat, and provide reasons for accepting or rejecting their opinions, consistent with *Morrison*.

### 3. Credibility Determination

Sergeant argues that the ALJ failed to properly evaluate his subjective allegations of disability. Sergeant maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Sergeant's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the

objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[18] The ALJ also addressed some of the *Polaski* factors and offered some reasoning for finding Sergeant's subjective allegations of disability less than credible.[19] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's

---

[18] *See* Administrative Record at 25-26.

[19] *Id*. at 26; 28.

23

credibility determination in this instance, however, because the ALJ's decision relies heavily on the ALJ's perceived lack of limitations from psychological impairments for Sergeant. As discussed in section *IV.B.2.a* of this decision, the ALJ failed to fully and fairly develop the record and properly consider the opinions of Sergeant's only treating source, Dr. Calderwood. Sergeant was treated regularly for nearly two years by Dr. Calderwood, and she opined that Sergeant had serious limitations due to psychological impairments.[20] Additionally, as discussed in section *IV.B.2.b* of this decision, the ALJ failed to fully and fairly develop the record and properly address the opinions of Dr. Oleskowicz and Maryam Nicksolat, both examining medical sources whose findings were consistent with Dr. Calderwood's opinions. Accordingly, the Court believes that in remanding this matter for further consideration of the opinions of Dr. Calderwood, Dr. Oleskowicz, and Nicksolat, the ALJ should also further consider Sergeant's allegations of disability in light of his reconsideration of the pertinent medical source opinions. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Sergeant's credibility determination.

### 4. *Hypothetical Question*

Sergeant argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Similarly, Sergeant also argues that the ALJ's hypothetical was incomplete and did not contemplate

---

[20] *See* Administrative Record at 429-434.

all of his functional limitations. Sergeant maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In section *IV.B.2.a* and *.b* and *IV.B.3* of this decision, the Court remanded this matter for further consideration of Dr. Calderwood's opinions, and Dr. Oleskowicz's and Nicksolat's opinions regarding Sergeant's impairments, and for further consideration of Sergeant's subjective allegations of disability. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Sergeant's limitations based on the medical evidence as a whole, including the opinions of Dr. Calderwood, Dr. Oleskowicz, and Nicksolat, and Sergeant's own subjective allegations of disability. *See Hunt*, 250 F.3d at 625.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

> or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Calderwood, Dr. Oleskowicz, and Nicksolat; (2) make a proper credibility determination in this matter; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Sergeant's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court finds no error with the ALJ's substance abuse analysis. Instead, the Court concludes that this matter should be remanded to the Commissioner for further proceedings on the ALJ's conclusion that absent the substance use, Sergeant is not disabled. On remand, the ALJ shall fully and fairly develop the record and provide clear and specific reasons for accepting or rejecting Dr. Calderwood's, Dr. Oleskowicz's, and Nicksolat's opinions. The ALJ must also consider all of the evidence relating to Sergeant's subjective allegations of disability, and address his reasons for crediting or

discrediting those allegations, particularly in light of his consideration of the medical source evidence. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Sergeant's limitations based on the medical evidence as a whole.

### VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ⁄8 day of August, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA